IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CRAIG FONTENOT,

        Plaintiff,

   v.

INTEL CORPORATION LONG
TERM DISABILITY PLAN,

      Defendant.

_____

Case No. 3:14-cv-00153-AA
OPINION AND ORDER


Stephen G. Nagle
Stephen Nagle & Associates
1002 West Avenue, Suite 100
Austin, Texas 78701

Richard H. Rizk
Richard Rizk, Attorney at Law
0434 S.W. Iowa St.
Portland, Oregon 97219
    Attorneys for plaintiff

Sarah J. Ryan
Jackson Lewis LLP
1001 S.W. 5th Avenue, Suite 1205
Portland, Oregon 97204
    Attorney for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Craig Fontenot ("plaintiff") filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Intel Corporation Long Term Disability Plan ("defendant"), alleging that defendant wrongfully terminated his claim for long-term disability benefits. Defendant moves to dismiss plaintiff's claim as untimely or, alternatively, transfer venue. For the reasons set forth below, defendant's motion is granted and this case is dismissed.

## BACKGROUND

At all relevant times, plaintiff was employed as an engineer at one of Intel's Oregon locations. Intel holds a long-term disability ("LTD") plan with defendant ("the Policy"),[1] under which disabled employees are entitled to monthly insurance benefits. While the Policy does not place any specific limitations on the types of qualifying conditions, it precludes coverage for impairments that are not supported by "Objective Medical Findings." Def.'s Mem. in Supp. of Mot. Dismiss Ex. E, at 4-6.[2]

---

[1] Aetna initially administered defendant's Policy; Reed Group later took over as Policy administrator.

[2] Defendant appends the Policy and its correspondences with plaintiff to its motion. Plaintiff also attaches the parties' communications to his response brief. Because plaintiff's complaint incorporates these materials by reference, the Court considers them in evaluating defendant's motion. Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 943 n.1 (9th Cir. 2008) (citations omitted). Plaintiff did not designate individual exhibits within or assign page numbers to his attachment; the Court refers to it as "Ex. 1" and employs the page numbers assigned in the docket.

Page 2 - OPINION AND ORDER

In early 2005, plaintiff filed a claim for short-term disability ("STD") benefits under the Policy, alleging that he could no longer work because of common variable immune deficiency, chronic fatigue syndrome, fibromyalgia, and depression. Defendant approved plaintiff's claim; he received STD benefits beginning on June 13, 2005. After obtaining the maximum in STD benefits, plaintiff applied for and was awarded LTD benefits.

At some unspecified time, plaintiff moved to Texas and was awarded Social Security disability benefits.

On January 13, 2009, defendant requested an update from plaintiff concerning his medical conditions. Because it did not receive a response from plaintiff, defendant terminated his benefits on February 13, 2009. Plaintiff subsequently replied to defendant's inquiry, after which his benefits were reinstated.

On June 5, 2009, defendant terminated plaintiff's LTD benefits, based on its determination that his underlying impairments could not be confirmed by "Objective Medical Findings." Plaintiff appealed defendant's adverse claim determination. On January 17, 2012, defendant upheld its discontinuation of plaintiff's LTD benefits. See Def.'s Mem. in Supp. of Mot. Dismiss Ex. A.

On January 23, 2012, plaintiff sent a letter to defendant, disputing its determination and requesting the opportunity to review and respond to the new medical evidence cited to by defendant in its January 17, 2012, decision. See Pl.'s Resp. to Mot. Dismiss Ex. 1, at 1.

Page 3 - OPINION AND ORDER

On February 7, 2012, defendant furnished the information sought by plaintiff in his previous correspondence and informed him of a supplemental voluntary appeals process. See Def.'s Mem. in Supp. of Mot. Dismiss Ex. B. Plaintiff elected not to pursue that remedy.

On January 28, 2014, plaintiff filed a complaint in this Court to recover LTD benefits from the allegedly wrongful termination date through the present. On April 14, 2013, defendant moved to dismiss plaintiff's ERISA claim as untimely under the Policy.[3]

## STANDARD

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the

---

[3] On June 5, 2014, plaintiff filed a surreply without first obtaining leave from the Court. Ordinarily, the Court would disregard this document. See LR 7-1(e)(3). However, in order to provide the most complete review of this dispute, the Court considers plaintiff's surreply. Regardless, it does not alter the outcome of this case.

Page 4 - OPINION AND ORDER

complaint "must contain sufficient allegations of underlying facts"
to support its legal conclusions. Starr v. Baca, 652 F.3d 1202,
1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

### DISCUSSION

Defendant argues that plaintiff's claim is untimely because he
received a final determination concerning LTD benefits on January
17, 2012, and failed to file this lawsuit within the two-year
contractual limitations period. Plaintiff opposes dismissal
because: "(1) the claim did not accrue until at least February 7,
2012; (2) the contractual limitations period should be tolled until
at least February 7, 2012; and (3) [defendant] is estopped from
asserting contractual limitations." Pl.'s Resp. to Mot. Dismiss 2.

I.   Accrual Date

Federal law governs the issue of when an ERISA cause of action
accrues and thereby triggers the start of the limitation period.
Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1188 (9th Cir.
2010). An ERISA claim accrues "at the time benefits are actually
denied" or "when the insured has reason to know that the claim has
been denied." Wetzel v. Lou Ehlers Cadillac Grp. Long Term
Disability Ins. Program, 222 F.3d 643, 649 (9th Cir. 2000)
(citations omitted). A "reason to know" exists where the plan
administrator communicates a "clear and continuing repudiation of
a claimant's rights under a plan such that the claimant could not
have reasonably believed but that his benefits had been finally
denied." Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1031 (9th
Cir. 2006).

Here, the January 17, 2012, letter satisfies either prong of the accrual test. The first paragraph begins: "[Defendant] is writing in response to your request for appeal of the denial of you claim for Long Term Disability (LTD). After a thorough review, your case has been denied as follows: LTD benefits remain denied as of 03/01/2009." Def.'s Mem. in Supp. of Mot. Dismiss Ex. A, at 1; see also Def.'s Mem. in Supp. of Mot. Dismiss Ex. E, at 19. The letter goes on to provide an eleven page, single-spaced, detailed denial of plaintiff's claim, complete with references to the relevant Policy provisions and medical evidence on which defendant relied in making its adverse decision. Def.'s Mem. in Supp. of Mot. Dismiss Ex. A, at 1-11. The final section, entitled "Appeal Rights," notifies plaintiff of his "right to bring a civil action under ERISA § 502(a)" or have his "claim or appeal" reviewed by the "Intel Quality assurance Review team." Id. at 10. Thus, because plaintiff's claim was actually and finally denied on January 17, 2012, he had reason to know, upon receipt of that letter, of defendant's clear and continuing repudiation of his claim. See Bonner v. Union Pac. Flexible Program, 2010 WL 1424280, *7 (D.Or. Feb. 8), adopted by 2010 WL 1424320 (D.Or. Apr. 7, 2010).

Plaintiff nonetheless contends that, "in his letter of January 23, 2012, [he] objected to the claims decision making process and requested the opportunity to review and respond to the new information upon which the decision had been made," such that his claim did not accrue until defendant responded on February 7, 2012. Pl.'s Resp. to Mot. Dismiss 3. Subverting plaintiff's argument is

the fact that, in his January 23, 2012, communication, he acknowledged that defendant's January 17, 2012, decision was a "den[ial] [of his] claim for disability" and "request[ed] that [defendant] reopen the claim." Pl.'s Resp. to Mot. Dismiss Ex. 1, at 1; see also Compl. ¶ 23 ("[defendant] sent a letter that purported to be a final denial of the disability claim [on] January 17 [but] this letter did not include all the information required by ERISA").[4] In other words, plaintiff's subsequent correspondence evinces that he understood defendant's January 17, 2012, transmission for what it plainly is - i.e. an actual denial of his appeal and the ultimate repudiation of his claim.

Additionally, plaintiff's assertion - that the January 17, 2012, letter was ineffective as a final claim denial because he criticized defendant's decision making process and requested additional information and the opportunity to respond - is contrary to law. It is well-established that a claimant has no right to receive and rebut medical opinion reports generated in the course of an administrative appeal prior to a plan administrator's final determination. Metzger v. Unum Life Ins. Co. of Am., 476 F.3d 1161, 1165-67 (10th Cir. 2007); Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 895-96 (8th Cir. 2009); Glazer v.

---

[4] As discussed in greater detail below, the Court finds that the January 17, 2012, transmission meets ERISA's notice requirements. Even accepting plaintiff's assertion that it was deficient, a reasonable claimant would nonetheless have understood this letter to be a clear and continuing repudiation of his benefits claim. See Withrow v. Halsey, 655 F.3d 1032, 1036 (9th Cir. 2011) ("actual denial" of a claim need not transpire via a formal written ERISA communication).

_Reliance Standard Life Ins. Co._, 524 F.3d 1241, 1245-46 (11th Cir. 2008); _see also_ _Silver v. Exec. Car Leasing Long-Term Disability Plan_, 466 F.3d 727, 731 n.2 (9th Cir. 2006). By extension, defendant's January 17, 2012, decision was not rendered any less final for the purposes of accrual simply because plaintiff disagreed with it or was not previously permitted to review and reply to the records upon which was based.

Furthermore, to the extent plaintiff asserts that defendant's "invitat[ion] to participate in a new level of voluntary appeal" rendered the January 17, 2012, denial non-final, his argument is unavailing. Pl.'s Resp. to Mot. Dismiss 3. The February 7, 2012, letter provided "the documents [plaintiff] requested in [his] correspondence dated January 23, 2012." Def.'s Mem. in Supp. of Mot. Dismiss Ex. B. The only other information relayed via this instrument pertains to a supplemental voluntary appeals process. In other words, the February 7, 2012, correspondence neither includes further discussion of the merits of plaintiff's appeal nor conveys an intent to reopen his claim. This letter also makes clear that refusal to participate in the voluntary appeals process would not toll the contractual limitations period or impair plaintiff's ability to seek recourse in federal court; he ultimately never availed himself upon that process and instead commenced an action in this Court. _See_ _id._ ("[t]he statute of limitations [will be] tolled during the time that voluntary appeal is pending . . . [if plaintiff] chooses not to submit a voluntary appeal, the Intel LTD Plan waives any right to assert that [he] failed to exhaust [his]

administrative remedies").

Accordingly, plaintiff's claim accrued no later than January 23, 2012, the date by which he undisputedly received defendant's January 17, 2012, letter.

II.  Equitable Tolling

"Equitable tolling is appropriate where there is excusable ignorance of the limitations period and [a] lack of prejudice to the defendant, or where the danger of prejudice to the defendant is absent, and the interest of justice [require relief]." Forester v. Chertoff, 500 F.3d 920, 930 (9th Cir. 2007) (citations and internal quotations omitted). Plaintiff asserts that "the letter of February 7, 2012, tolled limitations, because it created the opportunity for another level of appeal and offered him the opportunity to submit more information." Pl.'s Resp. to Mot. Dismiss 4. Specifically, plaintiff argues that "[d]enying him the opportunity to respond to [new information relied on in the January 17, 2012, letter was] an abuse of discretion," such that "accrual of the limitations period is tolled." Id. at 5 (citing Def.'s Resp. to Mot. Dismiss Ex. E, at 18).

Plaintiff's argument is unpersuasive in myriad respects. First, the Policy language on which he relies, when read in context, frustrates, rather than supports, his position:

> In the event that a claimant desires additional time to present evidence in support of his or her appeal, the claimant may request such additional time in writing. The Plan Administrator shall grant a claimant's written request for additional time, provided the written request is received before the Plan Administrator has made its determination on review, and the period for making the determination on review under this Section shall be

tolled during the period of any extension requested by or
on behalf of the claimant . . . Requests for additional
time and <u>requests to submit additional information
received after the Plan Administrator's determination on
review has been made shall be denied</u>, unless the Plan
Administrator in its sole discretion determines that the
information is material to the appeal and could not have
been provided earlier.

Def.'s Resp. to Mot. Dismiss Ex. E, at 18 (emphasis added).

By its plain language, the Policy does not contemplate the
provision of new information where, as here, an actual and final
claim denial has been issued. Moreover, as explained above, it is
not an abuse of discretion for defendant to refuse plaintiff an
opportunity to respond to the evidence it relied on in denying his
appeal. <u>Metzger</u>, 476 F.3d at 1165-67; <u>Midgett</u>, 561 F.3d at 895-96;
<u>Glazer</u>, 524 F.3d at 1245-46. Indeed, "the purpose of the production
of these documents is to enable a claimant to evaluate whether to
appeal an adverse determination" in federal court. <u>Glazer</u>, 524 F.3d
at 1245-46; <u>see also</u> <u>Silver</u>, 466 F.3d at 731 n.2 (litigating the
allegedly wrongful termination of benefits in federal court
provides "amply opportunity" for the claimant to rebut previously
undisclosed information generated by the plan administrator at the
internal review level). Nevertheless, plaintiff neither utilized
the voluntary appeals process nor submitted addition evidence, such
that defendant never had the opportunity to determine whether
additional information was material to plaintiff's appeal and could
not have been provided earlier.

In any event, the equities generally work against plaintiff in
the case at bar. Defendant furnished the information sought by
plaintiff within two weeks of receiving his request. At that time,

Page 10 - OPINION AND ORDER

defendant, "as a courtesy[,] offer[ed] [plaintiff] the opportunity to file a voluntary appeal," even though his "claim was filed prior to [the requisite date]." Def.'s Mem. in Supp. of Mot. Dismiss Ex. B. Defendant was under no compulsion to provide plaintiff with an opportunity to file a further appeal after it finally denied his claim on January 17, 2012. The fact that defendant did so does not entitle plaintiff to equitable tolling between the date of that final determination and the gratuitous appeal offer, especially in light of the fact that he elected not to pursue this supplemental remedy.

Lastly, while not dispositive, the Court notes that plaintiff was represented by counsel throughout the internal appeals process and, in fact, the same attorney continues to represent him in these proceedings. Under these circumstances, the Court presumes that plaintiff's counsel read and understood the Policy prior to the expiration of the two contractual limitations period. Even accepting February 7, 2012, as the date on which plaintiff's claim was finally denied, counsel sat on plaintiff's rights for the entirety of the two year contractual limitations period, waiting until the eleventh hour before filing suit. Yet nothing prevented counsel from initiating an ERISA claim on plaintiff's behalf months, or even weeks, earlier. For these reasons, plaintiff is not entitled to equitable tolling of his ERISA claim.

III. Limitations Period

"There is no specific federal statute of limitations governing claims for benefits under an ERISA plan." Wetzel v. Lou Ehlers

Page 11 - OPINION AND ORDER

Cadillac Grp. Long Term Disability Ins. Program, 222 F.3d 643, 646
(9th Cir. 2000) (citation omitted). The period in which an ERISA
claim must be filed hinges on the applicable state statute of
limitations and any contractual limitations period. Id. at 649.
"Defendant concedes that the applicable statute of limitations
would not bar the action, whether the state law applied is Oregon
law (6 year statute) or Texas law (4 year statute)." Def.'s Mem. in
Supp. of Mot. Dismiss 5 n.8. Thus, the only remaining issue "is
whether plaintiff's action is contractually barred by the
[Policy's] limitations period." Id.

Here, the Policy's "Exhaustion of Remedies" provision, which
is a subset of the "Administration of the Plan" section, states:

> No legal or equitable action for benefits under the Plan
> shall be brought unless and until the claimant: (A) has
> filed a Claim for Benefits in accordance with Section
> 6.01; (B) has been notified of an adverse benefit
> determination in accordance with Section 8.04; (C) has
> filed a written request for review of the adverse benefit
> determination in accordance with Section 8.05; and (D)
> has been notified that the Plan Administrator had
> affirmed the adverse benefit determination in accordance
> with Section 8.05.

> No legal or equitable action for benefits under the Plan
> shall be brought later than the earlier of (1) two years
> after the date of the notification that the Plan
> Administrator has affirmed the adverse benefit
> determination in accordance with Section 8.05 or (2) the
> date established under otherwise applicable law.

Def.'s Mem. in Supp. of Mot. Dismiss Ex. E, at 18-19.

Plaintiff does not dispute the reasonableness of this two year
contractual limitations period. See generally Pl.'s Resp. to Mot.
Dismiss; Pl.'s Surreply to Mot. Dismiss; see also Freeman v. Am.
Airlines, Inc. Long Term Disability Plan, 2014 WL 690207, *3-4

Page 12 - OPINION AND ORDER

(C.D.Cal. Feb. 20, 2014). Rather, plaintiff argues that "[t]he contractual limitations period is not enforceable because it was not enclosed to [him] in any denial letter" and not clearly delineated within the Policy.[5] Pl.'s Resp. to Mot. Dismiss 6 (citing 29 C.F.R. § 2560.503-1(g)(1); Solien v. Raytheon Long Term Disability Plan #590, 2008 WL 2323915 (D.Ariz. June 2, 2008); Novick v. Metro. Life Ins. Co., 764 F.Supp.2d 653 (S.D.N.Y. 2011)).

Contrary to plaintiff's assertion, the contractual limitations deadline was written in a manner calculated to be understood by the average plan participant and was not misleading or minimized. See Def.'s Mem. in Supp. of Mot. Dismiss Ex. E, at 18-19; Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899, 904-07 (9th Cir. 2009), cert. denied, 130 S.Ct. 3508 (2010) (summarizing the standard for construing the terms of a benefits plan). The Policy, at twenty-one pages, is not unduly long; it is also written in a uniform, regular-size font and formatted in straight-forward and easy-to-read fashion. The "Payment of Benefits" section concludes within less than one page of the "Administration of the Plan" section, which, as noted above, contains the contractual

---

[5] Plaintiff first raised the latter argument in his surreply. Compare Pl.'s Resp. to Mot. Dismiss 6 ("[t]he denial letter should contain specific information about any contractual limitations period"), with Pl.'s Surreply to Mot. Dismiss 4 ("because the Department of Labor Rules governing ERISA require it[s] disclosure in the denial letter, or because the placement of the contractual limitation in [the Policy] did not meet the DOL Rules[,] the contractual limitations period should not be enforced"); see also Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir. 2004) (courts ordinarily decline to consider arguments first raised in a reply brief).

limitations period. A reasonable plan participant whose disability claim had been denied would necessarily proceed to the "Administration of the Plan" section because it outlines what steps must be taken to dispute an adverse determination. See Def.'s Mem. in Supp. of Mot. Dismiss Ex. E, at 18-19. The Court finds that the Policy unambiguously articulates the limitations period, such that a reasonable person would understand when and in what manner a federal lawsuit may be commenced.

Further, the regulation that plaintiff relies on, 29 C.F.R. § 2560.503-1(g)(1), does not, on its face, require that defendant supply notice of the Policy's two year contractual limitations period in each denial correspondence. Rather, this regulation requires a plan administrator to provide, in relevant part,[6] "[a]

---

[6] This subsection prescribes several other notice requirements. See 29 C.F.R. § 2560.503-1(g)(1)(i)-(vi). Plaintiff, however, does not argue that his denial letters were deficient in any other respect. See generally Pl.'s Resp. to Mot. Dismiss; Pl.'s Surreply to Mot. Dismiss. Thus, it is questionable whether, even assuming 29 C.F.R. § 2560.503-1(g)(1)(iv) imposed a duty to disclose the contractual limitations period in each denial correspondence, plaintiff's claim would survive dismissal. Barnes v. AT&T Pension Benefits Plan--Nonbargaines Program, 2012 WL 1657054, *5 (N.D.Cal. May 10, 2012) ("under Ninth Circuit law, only substantial compliance with ERISA's notice requirements is required") (citations omitted); compare Eppler v. Hartford Life & Accident Ins. Co., 2008 WL 361137, *6-9 (N.D.Cal. Feb. 11, 2008) (denial letter was not defective where the majority of the requirements set forth in 29 C.F.R. § 2560.503-1(g) and (h) were articulated therein), with White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan, 896 F.2d 344, 347-50 (9th Cir. 1990) (denial letter that lacked three of the four requirements of the then-applicable ERISA notice regulation did not trigger the contractual limitations period); see also I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 57 (1st Cir. 1999) (technical defect in a letter denying benefits does not invalidate a contractual limitations period when the claimant knew that he had a cause of action within that period).

description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1(g)(1)(iv). All that is needed to satisfy ERISA is notice that a civil action may be filed upon the exhaustion of administrative remedies, which is precisely what transpired here. See Freeman, 2014 WL 690207 at *5; see also Def.'s Mem. in Supp. of Mot. Dismiss Ex. A, at 10-11.

Regardless, this subsection does not apply to the January 17, 2012, final benefits determination letter. Subsection (g) pertains to "any adverse benefit determination," whereas subsection (j) specifically governs "a plan's benefit determination on review." 29 C.F.R. § 2560.503-1(g), (j). Consistent with the plain language of this regulation, and in order to avoid an absurd result, 29 C.F.R. § 2560.503-1(g) and 29 C.F.R. § 2560.503-1(j) must be read as relating to initial denial correspondences and final denial correspondences, respectively. See Hancock v. Metro. Life Ins. Co., 590 F.3d 1141 (10th Cir. 2009) ("[a]s for MetLife's appeal-denial letter, it could not have violated § 2560.503-1(g) because that provision applies only to denials of benefits, not denials of appeals"); Midgett, 561 F.3d at 894-95 (the "adverse benefit determination" refers to the initial benefit denial, which is to be distinguished from a determination "on review"); see also 29 C.F.R. § 2560.503-1. Subjection (j), unlike subjection (g), requires only that the denial notification include "a statement of the claimant's

right to bring an action under" ERISA - in other words, it omits subsection (g)'s duty to describe the plan's review procedures and applicable time limits. Compare 29 C.F.R. § 2560.503-1(j)(4), with 29 C.F.R. § 2560.503-1(g)(iv). Thus, irrespective of ERISA's other requirements, the governing regulation, 29 C.F.R. § 2560.503-1(j), plainly does not require plan administrators to state the contractual limitations period in final denial letters. See, e.g., Sheckley v. Lincoln Nat'l Corp. Emps.' Retirement Plan, 2004 WL 2905347, *5 (D.Me. Dec. 15, 2004), adopted in relevant part by 366 F.Supp.2d 140 (D.Me. 2005).

Moreover, plaintiff's argument, as well as the precedent on which he cites, is belied by Scharff, in which "[t]he Ninth Circuit squarely addressed notice requirements for a plan's internal statute of limitations period" and "held that a plan administrator was not required to separately inform participants in final denial letters of time limits already contained in the [plan]." Freeman, 2014 WL 690207 at *4-5; see also Scharff, 581 F.3d at 903-908. Scharff reasoned that requiring plan administrators to inform participants separately of time restrictions already contained in the LTD benefits contract would, when other circuits have rejected a similar rule, "place the Ninth Circuit out of line with current federal common law and would inject a lack of uniformity into ERISA law." Scharff, 581 F.3d at 908.

Plaintiff argues that Scharff is not binding because, unlike the claimant in Scharff, he does not concede that the Policy "'met all applicable ERISA disclosure requirements and that [the plan

administrator] was not obligated under ERISA to inform him of the deadline.'" Pl.'s Surreply to Mot. Dismiss 3 (quoting Scharff, 581 F.3d at 907). As discussed above, however, the Policy sufficiently disclosed the contractual limitations period and ERISA's notice regulations do not mandate articulation of the deadline in each denial correspondence. As such, this case is directly analogous to Scharff. See, e.g., Freeman, 2014 WL 690207 at *4-5 (relying on Scharff to reject arguments identical to those asserted here). In addition, Solien, the district court case plaintiff relies on from within the Ninth Circuit, is readily distinguishable; it predated the Ninth Circuit's decision is Scharff and, more importantly, the underlying benefits plan in that case neglected to reasonably specify the contractual limitations period. See Solien, 2008 WL 2323915 at *6-8.

In sum, plaintiff has not cited to, and the Court is not aware of, any authority from within the Ninth Circuit imposing a duty on plan administrators to outline the limitations period in either the initial or final denial communication, especially where the underlying plan adequately articulates the time within which to commence a civil action. The Court therefore declines to create such a duty in the case at bar. Because notice of the two-year statute of limitations period was clearly set forth in the Policy, defendant had no obligation to separately inform plaintiff of the contractual deadline in any communication denying benefits. As a result, the Policy's two-year statute of limitations time period is enforceable.

As addressed in section I, plaintiff's claim accrued no later than January 23, 2012. Because this action was filed on January 28, 2014, five days after the limitations period expired, plaintiff's ERISA claim is untimely and defendant's motion is granted.

### CONCLUSION

Defendant's motion to dismiss (doc. 5) is GRANTED and plaintiff's claims are DISMISSED. The parties' requests for oral argument are DENIED as unnecessary.

IT IS SO ORDERED.

Dated this _24th_ day of June 2014.


_____
Ann Aiken
United States District Judge